Ruth Seiden TOMKIN, Plaintiff,

v.

Carl KAYSEN et al., Defendants.

No. 74 Civ. 4397 (CMM).

United States District Court,
S. D. New York.

Jan. 23, 1976.

Ira Jay Sands, New York City, for plaintiff; Ira Jay Sands, Stanley Yaker, Steven L. Siskind, New York City, of counsel.

Silver, Saperstein, Barnett & Solomon, New York City, for Polaroid Corp. and Director defendants; Isaac M. Barnett, Milton D. Solomon, David Saperstein, New York City, of counsel.

Cahill, Gordon & Reindel, New York City, for defendant Peat, Marwick, Mitchell & Co.; William E. Hegarty, R. Anthony Zeiger, George Wailand, Donald S. Parker, New York City, of counsel.

METZNER, District Judge:

Plaintiff Ruth Seiden Tomkin moves for class certification pursuant to Rule 23, Federal Rules of Civil Procedure. The allegations contained in the complaint are set forth in prior opinions of this court, *Tomkin v. Kaysen*, 74 Civ. 4397 (S.D.N.Y. March 20, 1975), *rearg.*

*granted,* 74 Civ. 4397 (S.D.N.Y. June 24, 1975) (adhered to in part, modified in part), and need not be fully detailed here. The complaint, after disposition of the motions to dismiss, seeks relief under Sections 10(b), 14(a) and 18 of the Securities Exchange Act of 1934. 15 U.S.C. §§ 78j(b), 78n(a) and 78r.

Plaintiff, in conjunction with her two sisters, purchased 100 shares of the common stock of Polaroid Corporation (Polaroid), a widely held public corporation, on March 5, 1974. Her complaint alleges that Polaroid, certain officers and directors thereof, and Peat, Marwick, Mitchell & Co. (PMM), Polaroid's accountants, issued public information in its 1972 Annual Report and elsewhere, which essentially painted a rosy picture for the newly introduced SX–70 camera system, failed to disclose difficulties and technical problems then known about the system by the defendants, and failed to provide certain cash reserves made necessary by such information, or to disclose that such reserves were not provided for.

In order to qualify for class action treatment under Rule 23(a) of the Federal Rules of Civil Procedure, the representative plaintiff must first show numerosity, commonality, typicality, and adequacy of representation. In addition, Rule 23(b) requires that the common questions of law or fact predominate over individual claims and that class action is superior to other means for the efficient disposition of the litigation. In conjunction with this motion, depositions were taken by the defendants, in addition to the usual affidavits submitted on the motion.

On its face the complaint presents the classic class action case.

■ Defendants argue that plaintiff has failed to describe a class period with any definiteness. It is true that the court cannot discern, and plaintiff's counsel offers no assistance, why the date of January 1, 1973 was chosen as the beginning date. I find that the class injury as alleged covers the period April 24, 1973 through July 1, 1974. The first statement referred to in the amended complaint is the 1972 Annual Report which was issued April 24, 1973.

While the alleged end date of August 6, 1974 is not clearly defined, it appears that this refers to a date when Polaroid issued a statement referring to an instant motion picture system which allegedly contained material omissions. Plaintiff's purchase on March 5, 1974, clearly prevents her from being the representative of a class concerning this project. Similarly, she cannot be a class representative for the project known as the "Zip" camera.

The class period under this complaint ends on July 1, 1974, when it is alleged that Polaroid admitted production cutbacks in the SX–70 system.

■ However, the most serious objection to this class certification arises under the requirement that the plaintiff be an adequate representative of the class. This means that the interests of the plaintiff may not be inimical to the interests of the class members, and that the plaintiff may be expected to pursue the action forthrightly and with vigor. *Mersay v. First Republic Corporation,* 43 F.R.D. 465 (S.D.N.Y.1968).

The court has carefully reviewed the depositions, the affidavits submitted on the motion, as well as the entire file and, quite frankly, is both surprised and confused by what the record reflects.

Plaintiff Ruth Seiden Tomkin testified at her deposition that she discussed the March 5, 1974 purchase with her father and that she believed her father had consulted on the matter with her brother, Melvin Seiden (a securities advisor and expert, president of Seiden & DeCuevas, now investment bankers and advisors). She believed that her father, Murray Seiden, had control of her account, made the final decision to purchase, and ordered the purchase.

This action had originally been brought in the name of Murray Seiden. Soon after the original complaint was filed, however, he learned that he was not the owner of the Polaroid shares, but that his daughters were. A motion was made, according to plaintiff's counsel, for a "mundane change of name . . . very much like correcting spelling . . . ." The court allowed the complaint to be amended. However, a reading of the amended complaint shows that it went far beyond this, adding a charge of conspiracy and reference to the 1972 Annual Report, the only pre-purchase accountant-certified document alleged.

In Murray Seiden's affidavit in support of the motion to change the name of plaintiff, he stated that he had "full authority and knowledge to buy and sell securities in [plaintiff's account]," and that he had "the practical management of the securities account of my daughter Ruth."

However, on his deposition Murray Seiden testified that he had no discretionary power over his daughter's account, and that his son, Melvin Seiden, had full control. He said:

"[I]f I recommended the purchase of Polaroid, I only voiced an opinion. I knew as much about Polaroid as you did, maybe nothing. Let me tell you why. My son does the buying; I told you that forty-nine times already. Now what are you asking me that for? I didn't even recommend it to the girls. They—I thought it was all right. They asked me what I thought, that's all."

Melvin Seiden testified that *he* had purchased these shares for his sisters' account without either recommending them to his sisters or consulting with them.

Murray Seiden indicates that it was Melvin Seiden who originally told him to bring the action. Melvin Seiden denied that he told his father to institute the action, and stated he had not heard of the action until after the original complaint had been filed.

In contradiction to this, Ira J. Sands, plaintiff's attorney, swore to a "lengthy meeting [prior to filing the original complaint] with Melvin Seiden [a noted securities analyst], with whom I examined the pros and cons of the violations."

Thus, it is unclear to the court who was the instigator of the purchase, what the purchasers knew about the stock, and who is to be looked to as the source of plaintiff's knowledge. This may not in itself render the plaintiff inadequate as a representative, since she is the owner of the shares. *Cf. Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966). However, there are other factors which enter into the picture.

Unlike the *Surowitz* situation, it appears that Ruth Seiden Tomkin was an unwilling plaintiff essentially compelled by her father to take over his action. Murray Seiden testified that:

"Well, I told her that there was an error made. I thought I owned the stock, but it's in your name, Ruth, and your sisters' names, and you have to be the plaintiff; words along those lines.

So she said, 'Why do I have to, dad? Why don't you let one of my other sisters?' I said, 'You have got two children, they got four each; you will be more available.' . . . She went along with it right away. She said, 'Look, all right, if you want to pick on me, all right.' "

Plaintiff is unclear in her deposition as to whether she ever discussed becoming a plaintiff with her father, and is generally evasive on the subject of her "volunteering."

It is clear that the cost of notice to the class must be borne by plaintiff. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Plaintiff was unwilling to state that she was aware of the possible costs she could

incur under an order properly calling for individual mailed notice to the class. Although her attorney stated for the record that he felt that she would pay for whatever notice the court ordered, she would not agree herself. On the other hand, her attorney would not allow her to adopt his statement. Plaintiff's hesitation is an element going toward the possible vigor employed in protecting the rights of the class.

Plaintiff's deposition reveals that she has no knowledge of her complaint, of any of the claims, of the identity of any defendant other than Polaroid (and "their accountant"), of the duties of a class action representative, or the like. Indeed, she had not met her attorney until the first day of her deposition, nor had she seen her complaint until that time.

Melvin Seiden was hired by Ira J. Sands as Mr. Sands' securities advisor in this case. Mr. Sands has refused to allow plaintiff, Murray Seiden or Melvin Seiden to testify either as to the terms of his hiring, or the terms of his arrangements with the Seidens, under a claim of attorney-client privilege or work product. Defendants never submitted these objections to the court for a ruling. Melvin Seiden later stated that, subject to the approval of the board of directors of his firm, he would donate to the class any fee that the court may award him for his services if a recovery is obtained in this action. This is not to say that there is not some other form of compensation agreement, or that the board may refuse the request. Further, both Murray Seiden and plaintiff hold shares in Melvin's firm.

All of these factors have convinced the court that plaintiff is lacking in the high standard of forthrightness and vigor required of a class action plaintiff. Because the requirements of Rule 23(a) (4) have not been satisfied, this motion is denied.

So ordered.