### In re COMMONWEALTH OIL/TESORO PETROLEUM SECURITIES LITIGATION.

#### MDL No. 347.

United States District Court,
W. D. Texas,
San Antonio Division.

July 26, 1979.

254

John Skogland, McGown & McClanahan, San Antonio, Tex., liaison counsel for plaintiffs.

Stuart Savett and Donald L. Weinberg, Kohn, Savett, Marion & Graf, P.C., Arnold Levin, Adler, Barish, Daniels, Levin & Creskoff, Philadelphia, Pa., for plaintiff David Jaroslawicz.

Richard de Y Manning, New York City, for plaintiff Morton S. Bouchard, et al.

Jules Brody, Stull, Stull & Brody, New York City, for plaintiff Harry L. Lewis.

Daniel W. Krasner, Wolf, Haldenstein, Adler, Freeman & Herz, New York City, for plaintiffs Seymour Joseph & S. Richard Stern.

Steven B. Rosenfeld, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, R. Laurence Macon, Cox & Smith, Inc., San Antonio, Tex., liaison counsel for defendants, counsel for defendants Tesoro Petroleum Corp., Robert V. West, Robert G. Reed,

Charles R. Roberts, James F. Smith, James C. Phelps, Dean M. Bloyd, L. Robert Fullem, and John Rote.

Vaughn C. Williams, Skadden, Arps, Slate, Meagher & Flom, New York City, for defendant Gary W. Davis.

George Weisz, Clearly, Gottlieb, Steen & Hamilton, New York City, Reese L. Harrison, Jr., Oppenheimer, Rosenberg, Kelleher & Wheatley, Inc., San Antonio, Tex., for defendant Deloitte Haskins & Sells.

Thomas F. Curnin, Cahill, Gordon & Reindel, New York City, for defendant E. F. Hutton & Co., Inc.

Lenard M. Parkins, Sheinfield, Maley & Kay, Houston, Tex., for defendant Commonwealth Oil Refining Company, Inc.

John F. Arning, Sullivan & Cromwell, New York City, John W. Davidson, Sawtelle, Goode, Davidson & Troilo, San Antonio, Tex., for defendants Sol L. Descartes, Jay Howard Laeri, Sergio Camero, Raphael Pico, & Angel M. Rivera.

William H. Tinsley, Johnson & Cravens, Dallas, Tex., for defendant Norman C. Keith.

Roger L. Waldman, Webster & Sheffield, New York City, for defendant Peter M. Detwiler.

George J. Wade, Shearman & Sterling, New York City, for defendants George F. Bennett & William A. Lockwood.

PATRICK E. HIGGINBOTHAM, District Judge.

### PRETRIAL ORDER NO. 5

#### I. Introduction

The factual background of this litigation is set forth in detail in this court's Memorandum Opinion and Order entered January 29, 1979, and will not be repeated here. *See In re Commonwealth Oil/Tesoro Petroleum Corp. Securities Litigation*, 467 F.Supp. 227 (W.D.Tex.1979). This order deals largely with the question of class certification in the four actions involved, and also with a motion to dismiss in the *Lewis* and *Jaroslawicz* cases, and a motion for summary judgment in *Bouchard*. In *Lewis* and *Jaroslawicz*, the parties have stipulated to the certification of a class, and an agreed order reflecting that stipulation is being entered simultaneously with the entry of this order. A similar stipulation has been reached with respect to one of the claims in the *Joseph* action, and an agreed order reflecting that stipulation will be entered with this order. In addition, a judgment in the *Bouchard* action in favor of E. F. Hutton & Co., Inc. reflecting the dismissal of all claims against Hutton by virtue of the January 29, 1979 order will be entered pursuant to Rule 54(b), F.R.C.P. simultaneously with the entry of this order. Finally, an order directing notice of the pendency of a class action in *Lewis* and *Jaroslawicz*, along with a form of notice, will be entered.

#### II. *Joseph—Motion for Class Certification of Section 11 Claim*

Plaintiff Seymour Joseph commenced this action on August 4, 1977 as a class action. He alleged that the Tesoro defendants knowingly concealed adverse information about Corco's financial condition and failed to write down the value of Tesoro's equity investment in Corco when such a write-down should have been made. Joseph founds his claim on § 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 promulgated thereunder. On August 3, 1978 Richard Stern intervened in the § 10(b) action and also asserted a class claim under section 11 of the Securities Exchange Act alleging that the registration statement and prospectus filed in December, 1975, contained misstatements and omissions. This court, in its order of January 25, 1979, stated that it could not resolve on the face of the pleadings the question of whether Stern, in the exercise of reasonable diligence, should have known of his claim by August, 1977, and thus could not determine whether the section 11 claim was barred by the section 13 statute of limitations.

Defendants do not oppose the certification of the § 10(b) class and do not challenge Stern's or Joseph's ability to represent that class. They do oppose the pro-

posed certification of the section 11 class, however, on three related grounds:

1) that because Stern is a sophisticated investor who should have known of his claim in the early spring of 1977, the claim is time-barred and Stern thus is not a member of the class he purports to represent;

2) that the issue of whether the class members' claims are barred by the statute of limitations is individual to each member, and thus individual questions predominate over class questions; and

3) alternatively, that all members of the class should have known of their claims by early spring, 1977, so the claims of the entire class are time-barred.

The initial question is whether and to what extent this court in ruling on a class certification motion may consider the merits of a plaintiff's case. There is considerable authority for the proposition that at the class certification stage of a proceeding, a court may make no inquiry into the merits. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *Miller v. Mackey International, Inc.,* 452 F.2d 424, 428 (5th Cir. 1971). Rather, the focus of a court in passing on a Rule 23 motion must be confined to an examination of the Rule 23 requirements. "There is absolutely no support in the history of Rule 23 or legal precedent for turning a motion under Rule 23 into a Rule 12 motion to dismiss or a Rule 56 motion for summary judgment by allowing the district judge to evaluate the possible merit of the plaintiff's claims at this stage of the proceedings. Failure to state a cause of action is entirely distinct from failure to state a class action." *Miller v. Mackey International, Inc., supra* at 428.

At the same time, however, the very nature of Rule 23 requires some inquiry into the plaintiff's claims. The Fifth Circuit has recognized that class certification motions demand the somewhat uneasy meshing of "the power and duty of the court to inquire into maintainability—which requires the satisfaction of all the requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)—with the generalized state-

ment that the court should not exclude plaintiff as a representative because he cannot succeed on the merits of his individual claim." *Huff v. N. D. Cass Co. of Alabama,* 485 F.2d 710, 712 (5th Cir. 1973). In this case, however, the balance is not difficult to strike; the court, without inquiring into whether Tesoro's statute of limitations defense is valid, is able to determine that the plaintiff and putative class satisfy Rule 23's requirements. Stern is an adequate representative and his claim is typical of those of the members of the proposed class; if his section 11 claim proves to be time-barred, so is the claim of the class.

Defendants' primary challenge to the certification of the class revolves around the proposition that the due diligence standard of the section 13 statute of limitations is subjective. They contend that Stern is not chargeable with the knowledge of an ordinary investor but with that of an unusually sophisticated one. Tesoro argues that the facts of which Stern as a sophisticated investor was or should have been aware were sufficient to put him on inquiry notice in spring, 1977; his claim is therefore time-barred, they argue, he is not a part of the class that he purports to represent, and he is an inadequate representative.

■ Tesoro's reading of section 13 is incorrect. The standard to be applied to Stern as well as to the class is objective— whether the facts available would have put a reasonably prudent investor on "inquiry notice" of the possibility that the registration statement contained misstatements and omissions, thus triggering the duty to act with due diligence and make reasonable inquiries. *See Cook v. Avien, Inc.,* 573 F.2d 685, 696 n.24 (1st Cir. 1978); *Weinberger v. Retail Credit Co.,* 498 F.2d 552 (4th Cir. 1974); *Rosenberg v. Hano,* 121 F.2d 818 (3rd Cir. 1941); *see also In re Anthracite Coal Antitrust Litigation,* 78 F.R.D. 709 (M.D.Pa.1968). The fact that Stern managed his own portfolio and had some degree of expertise in so doing does not render a more stringent standard appropriate. If the facts of which he as an ordinary prudent investor should have been aware were

sufficient to put him on inquiry notice of his claim, then they also were sufficient to notify the class members. The knowledge with which Stern is charged does not separate him from the class or make him an inadequate representative. Stern, like the other members of the class, claims that he purchased Tesoro preferred stock issued pursuant to the 1975 registration statement, that the registration statement and prospectus contained misstatements and omissions, and that he thereby suffered injury. Tesoro offers no further challenge to Stern's adequacy or typicality.

■ Defendants next argue that the constructive knowledge of each class member must be scrutinized separately and thus that individual questions predominate over common ones. Defendants' argument has two flaws. First, it is again premised on the faulty view that the commencement of the period of limitations under section 13 is determined by a subjective test. Instead, the same standard of due diligence applies to all class members. Second, the defendants' argument assumes that different information was available to the various class members. Several cases on which Tesoro relies for the proposition that the existence of a statute of limitations defense requires a court to examine the circumstances of each class member individually are cases in which the information available to the class members was not uniform. *See, e. g., Speros v. Nelson*, 16 F.R.Serv.2d 1506 (D.Ore. 1973); *In re Anthracite Coal Antitrust Litigation, supra*. In this case, however, there is no claim of selective disclosure to some but not to all class members. All class members are charged with knowledge of the information in the public domain. The question of whether Tesoro's various announcements were sufficient to put a reasonably prudent investor on inquiry notice is common to the class. Similarly, if Stern had had access to certain specialized information, defendants could challenge the adequacy of his representation or the typicality of his claim. Although Stern is alleged to have read regularly *Petroleum Outlook*, an industry publication, defendants do not contend that it contained any information

about Tesoro that had not already been the subject of either a press release or a report to shareholders.

It is true that individual questions may arise as to whether, for example, a particular class member exercised due diligence and yet, for reasons peculiar to that person, was unable to discover the basis of his claim. Courts have found that the possible existence of these relatively uncomplicated and infrequent individual issues does not preclude class certification.

> To hold that [such] individual issues . . . necessarily prohibit class treatment in a securities case would do violence to the remedial nature of the securities acts. Professor Loss has stated that "[t]he ultimate effectiveness of the federal remedies . . . may depend in large measure on the applicability of the class action device." *Green v. Wolf Corporation*, 406 F.2d 291 (1968), *quoting* 3 Loss, Securities Regulation 1819 (2d ed. 1961), 406 F.2d at 295. It has been repeatedly recognized that these types of individual questions are inherently present in every securities case; *Kronenberg v. Hotel Governor Clinton, Inc.*, 41 F.R.D. 42 (S.D.N.Y. 1966); *Lamb v. United Security Life*, 59 F.R.D. 25 (S.D.Iowa 1972), and unless it appears that they will be predominate, individual issues do not make a suit inappropriate for class status. *Ramsey v. Arata*, 406 F.Supp. 435, 441–42 (N.D.Tex. 1975).

■ The requisites of Rule 23 having been satisfied, certification of the proposed section 11 class is thus proper. Stern is an adequate representative; his claim is typical; common questions predominate. The issue of whether the information in the public domain was sufficient to put a reasonably prudent investor on "inquiry notice" of his claim may not be resolved at this preliminary stage of the proceedings.

Plaintiff's motion to certify a class represented by Richard Stern and comprised of all persons who purchased $2.16 Cumulative Convertible Preferred Stock issued pursuant to the registration statement filed by

Tesoro in December, 1975 between December 17, 1975 and December 15, 1976, is GRANTED. The parties will submit a proposed form of notice to the members of this class in accordance with the schedule provided in their agreed order regarding Class A.

### III. Bouchard—Motion for Class Certification and Summary Judgment

As a result of this court's Memorandum Opinion and Order filed January 25, 1979, the following claims remain in the *Bouchard* case:

1) The Bouchard plaintiffs' class action claim under section 14(e) of the Securities Exchange Act against Keith, the pre-Tesoro and ongoing Corco directors alleging misrepresentations in the April 22 and 28, 1975, tender offer letters.

2) The Bouchard plaintiffs' class action claims under section 14(e) against Keith, the ongoing and pre-Tesoro Corco directors, Tesoro, West, Fullem, and Rote alleging omission of facts relating to an alleged compensation agreement between Keith and Tesoro from the May 4, 1975, joint press release.

3) The Bouchard plaintiffs' class action claim under section 14(e) against Tesoro, West, Fullem, and Rote alleging omission of facts relating to an alleged compensation agreement between Keith and Tesoro from the May 5, 1975, amended tender offer.

4) The Bouchard plaintiffs' class action claim under section 14(e) against Keith, the ongoing and pre-Tesoro Corco directors alleging misrepresentations with respect to a plan to consolidate Corco and Tesoro in the May 4, 1975, joint press release.

5) A derivative claim brought by the Bouchard plaintiffs against Keith and the ongoing and pre-Tesoro Corco directors alleging breach of fiduciary duty in failing to consider offers by Ashland Oil, Inc. and the Charter Company to purchase Corco shares or to merge with Corco.

6) A derivative claim brought by the Bouchard plaintiffs against Keith and the ongoing and pre-Tesoro Corco directors

alleging bad faith in instituting a lawsuit on April 25, 1975, to enjoin Tesoro from pursuing its tender offer.

The plaintiffs have moved for certification of a class of persons who held Corco stock on June 6, 1975 (the date of the completion of the tender offer) and did not tender shares pursuant to the tender offer. The plaintiffs also seek certification of a class of shareholders with regard to their derivative claims pursuant to Rule 23.1. Defendants Keith, the ongoing Corco Directors (Camero, Descartes, Pico, and Rivera), defendants Bennett and Lockwood, and the Tesoro defendants (Tesoro, West, Fullem, and Rote) have responded with a motion for summary judgment and for denial of class certification. Because the legal bases of the motions are intertwined, they must be considered together. First, the motions for summary judgment will be discussed, as the issues raised in these motions relate also to class certification questions. There will then follow a consideration of the class certification issues.

### A. Motions for Summary Judgment.

The motions for summary judgment are founded on the argument that the plaintiffs will not be able to prove that their injury was caused by the allegedly misleading tender offer documents and that, consequently, their claims are doomed to failure. The argument is premised upon the following facts.

At the time of the tender offer, the only plaintiffs who owned Corco stock were Morton Bouchard, Sr., Marion Bouchard (his wife), and Bouchard Transportation Co. (the other plaintiffs are either executors of the estate of Morton Bouchard, Sr. or trustees of a trust created by Morton Bouchard, Sr.). It is undisputed that Morton Bouchard, Sr. made all the investment decisions for himself, his wife, and for Bouchard Transportation Co. It was he who decided not to tender the shares. Unfortunately, Morton Bouchard, Sr. died in 1976. He apparently never told anyone why he did not tender his Corco shares; in fact, Bouchard, Jr. testified by deposition that his fa-

ther told him that it was none of his business whether the shares were tendered.

The defendants claim that under these circumstances there is no way that the plaintiffs can ever prove that Morton Sr. even *saw* the allegedly misleading documents—the tender offer letters, the May 4 joint press release, or the May 5 amended tender offers—much less prove that he relied upon them in reaching his decision not to tender his shares. The plaintiffs' Corco shares were held in a street name by the Marine Midland Bank which, according to the deposition of one of its officers, never sent tender offer or other related materials to Morton Bouchard, Sr. The only evidence that Bouchard Sr. even saw the latter two documents is that they were published in the *Wall Street Journal*, to which Morton Sr. had a subscription. These facts upon which the summary judgment motions are grounded are not in dispute. Their legal effect at this stage, however, is disputed and must be explored.

■ The element of the plaintiffs' claim involved here that the defendants argue cannot be proved is reliance. Reliance is a subspecies of causation, proof of which is strictly required in common law fraud cases. In securities fraud cases under federal law the requirement has been significantly attenuated. As might be expected, most of the case law involves decisions in cases under Rule 10b–5.

■ The leading case on reliance is *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). That was a Rule 10b–5 nondisclosure case in which the Supreme Court held that

[u]nder the circumstances of this case, involving primarily a failure to disclose, positive proof of reliance is not a prerequisite proof to recovery. All that is necessary is that the facts withheld be material . . . . 406 U.S. at 153–154, 92 S.Ct. at 1472.

*Ute* left unclear whether its holding was restricted to nondisclosure (as opposed to affirmative misrepresentation) cases, or to

open market (as opposed to face-to-face) cases, and whether the presumption of reliance was rebuttable. *See* Note, 88 *Harv. L.Rev.* 584 (1975). Subsequent decisions by lower courts have established a general rule that in nondisclosure cases reliance is presumed where the omitted fact is material, though the presumption may be rebutted. The rule is a sound one, as it would often be difficult to prove positive reliance upon a nondisclosure. It has also been recognized that in an open market situation, misrepresentations can cause injury even if there is no direct reliance upon them, simply by affecting the open market price, and in such cases some courts have dispensed with the requirement that reliance be proved. This is the "fraud-on-the-market" theory that has been adopted in several circuits, though the Fifth Circuit expressly declined to decide whether it was the law of this circuit in *Rifkin v. Crow*, 574 F.2d 256 (5th Cir. 1978).

In *Rifkin*, the Fifth Circuit discussed the reliance requirement at some length:

[W]here a 10b–5 action alleges defendant made positive misrepresentations of material information, proof of reliance by the plaintiff upon the misrepresentation is required. Upon the absence of proof on the issue, plaintiff loses. On the other hand, where the plaintiff alleges . . . nondisclosure of material information, the *Ute* presumption obviates the need for plaintiff to prove actual reliance on the omitted information. Upon a failure of proof on the issue, defendant loses. But this presumption . . . is not conclusive. 574 F.2d at 262.

The first step, then, is to determine whether a case is a misrepresentation or a nondisclosure case. This case appears to be both.

The claims based on the optimistic Keith tender offer letters appear to be misrepresentation claims. Of course, any misrepresentation can be perceived as a nondisclosure since the making of a false statement involves a concomitant failure to disclose the truth; the law draws a line between misrepresentation and nondisclosure, however, and this claim falls clearly on the

misrepresentation side of the line. The claims based on the allegedly fraudulent statement in the May 4 joint press release concerning an intention to merge Corco and Tesoro also appear to be misrepresentation claims. On the other hand, the claims of failure to disclose an alleged "sweetheart" compensation deal between Keith and Tesoro are nondisclosure claims.

As to the misrepresentation claims, *Rifkin* requires a showing of positive reliance by the plaintiffs. [The fraud-on-the-market theory, which may or may not be the law in the Fifth Circuit, is not applicable to a tender offer situation such as this, since the price offered by the offeror was not set by the market but by Tesoro. Thus the reliance requirement cannot be avoided by use of this theory]. The question is whether it will be possible, under the circumstances of this case as outlined above, for the plaintiffs to show that the decision not to tender Corco shares was made in reliance upon the allegedly misleading documents.

The only evidence so far uncovered by the plaintiffs in support of the reliance element of their claim after several months of discovery is that Bouchard Sr. had a subscription to the *Wall Street Journal* and knew of the tender offer. Following a hearing held on April 27, 1979, this court granted plaintiffs' counsel five days in which to indicate sources of further evidence concerning Morton Bouchard's reliance upon the tender offer documents. The time for compliance was subsequently extended until May 11, on which date plaintiffs' counsel submitted a brief letter to the effect that one person close to Bouchard discussed the tender offer with him, while another "probably" discussed the offer with him. The letter also states that Bouchard's wife knew that he read the *Wall Street Journal* with great interest, though she does not know that he read the issue in which the amended tender offer was published. It is doubtful that this evidence would be sufficient at trial to establish a *prima facie* case of reliance and to withstand a motion for directed verdict. The question here, though, is whether it is sufficient to raise a question of fact as to whether the allegedly misleading documents were relied upon. In this regard, the motion for summary judgment here is an unusual one. The defendants have not produced facts by deposition or affidavit that tend to prove that Bouchard Sr. did *not* rely on the materials. Rather, they have produced evidence that tends to prove that it will not be possible to show reliance.

At this stage, the possibility that reliance can be proved appears slim. The plaintiffs' accountant has already been deposed, and has been unable to offer testimony in support of the claim that the materials were relied upon. In the course of several weeks plaintiffs' counsel was unable to uncover further sources of proof on this matter. Nonetheless, it cannot be said at this time that proof of reliance will be impossible and that no fact question exists. Thus while, as discussed below, the problem of proof of reliance has important bearing on the motion for class certification, the motions for summary judgment are DENIED.

■■  Denial of the motions with respect to the misrepresentation claims, of course, mandates their denial also as to the nondisclosure claim. The question of reliance with regard to the latter claims do, however, raise some interesting questions that will likely be significant at trial. First, does the *Ute* presumption of reliance in Rule 10b–5 cases extend also to section 14(e) cases? The presumption ought to apply in the tender offer context, because it is founded on the extreme difficulty of proving reliance upon a nondisclosure. Second, even assuming that the plaintiffs here are entitled to the presumption, would it be unfair to apply it here since it will be virtually impossible for the defendants to rebut it in view of the fact that Morton Sr. is dead? On this second question, the sound conclusion is that, while there might be slight unfairness to the defendants in presuming reliance, it would be even more unfair to plaintiffs to require them to show actual reliance. Since Bouchard Sr., Marion Bouchard, and the Bouchard Transportation Co. held approximately $500,000 worth of

Corco stock, it is difficult to believe that Morton Sr. did not at least peruse the tender offer materials. The defendants argue, however, that even if this is a nondisclosure case, the summary judgment motion should be granted. They argue that even in nondisclosure cases, there is a requirement of "general" reliance. This requirement appears to have been taken from *Mulcahey v. Petrofunds, Inc.*, 79 F.R.D. 272 (S.D.Tex.1978). To the extent this case announces a rule different from that announced in *Rifkin* by the Fifth Circuit, this court is bound to follow the circuit's view that in nondisclosure cases there is a rebuttable presumption of reliance when an omission is shown to be material.

The defendants also point to the fact that the plaintiffs' Corco stock was held in a street name by the Marine Midland Bank, whose officers testified on deposition that tender offer or other materials were not sent to Morton Sr. The *Wall Street Journal* publication, however, may suffice to entitle plaintiffs to the presumption of reliance established by *Ute*.

B. *Motions to Deny Class Certification.*

■ The motions to deny class certification consist of a panoply of arguments in support of two legal contentions—namely, that the plaintiffs have failed to satisfy either the typicality or the adequacy of representation requirements of Rule 23. [There are also arguments that a class action is not superior to other forms of action and that this class action would be unmanageable. In light of the discussion that follows, these arguments need not be reached].

The lack of typicality argument is closely related to the summary judgment argument discussed above. The primary contention is that since the plaintiffs' claims should be disposed of by summary judgment, the plaintiffs are not members of the class they seek to represent and their claims are not typical of those of the class members; consequently, the defendants urge, the class should not be certified. *See East Texas Motor Freight Systems, Inc. v. Rodri-*

*quez*, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977); *Satterwhite v. City of Greenville,* 578 F.2d 987 (5th Cir. 1978), *vacated,* —— U.S. ——, 100 S.Ct. 1334, 63 L.Ed.2d 773 (1980).

In addition, the defendants argue that even if summary judgment is denied, the typicality requirement would not be satisfied because the peculiar reliance problems of the named plaintiffs would not be typical of those of the class members. In support of this argument, the defendants cite *Greenspan v. Brassler,* 78 F.R.D. 130 (S.D. N.Y.1978) where a putative Rule 10b–5 class action was denied certification on the basis of lack of typicality because the reliance issue with regard to the named plaintiff was atypical of the members of the proposed class. In *Greenspan,* however, there was some positive evidence that the named plaintiffs may not have relied on the allegedly fraudulent documents; there was evidence that they had relied instead upon recommendations of a relative. In that respect *Greenspan* is distinguishable from this case. Nonetheless, the reasoning of the case is apposite here, and reveals serious problems with regard to typicality that call into question the propriety of certification of a class in this case.

The court in *Greenspan* quoted from the Official Note of the Advisory Committee on Rule 23:

[A] fraud case may be unsuited for treatment as a class action if there was material variation in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed.

The court added that

class status must be denied when, as here, the putative representative is subject to unique defenses that will unnecessarily prejudice the class's probability of success. 78 F.R.D. at 132.

*See also Koos v. First National Bank of Peoria,* 496 F.2d 1162 (7th Cir. 1974). The unique problems faced by the purported class representative here with regard to proof of reliance raise doubts as to whether the typicality requirement of Rule 23 has

been met and, consequently, as to whether a class ought to be certified. This court recognizes that reliance is an issue that is by its nature unique to each applicant for relief. The courts have, in spite of this fact, certified class actions in securities fraud cases on the grounds that common questions of law or fact predominate over individual questions of reliance, and that the purposes of Rule 23 are served by class certification. *See, e. g., Weisman v. MCA, Inc.,* 45 F.R.D. 258 (D.Del.1968); *Green v. Wolf Corp.,* 406 F.2d 291 (2d Cir. 1968), *cert. denied,* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766; *Cameron v. E. M. Adams & Co.,* 547 F.2d 473 (9th Cir. 1976). In many such cases the problem of the inherent atypicality of reliance among class members has been remedied by trying separately as to each claimant the issue of reliance. *See Sharp v. Coopers & Lybrand,* 70 F.R.D. 544 (D.Pa.1976). Those courts that have considered the problem and have nonetheless certified a class, however, have done so in cases where there was no special and obvious obstacle to proof of reliance by the proposed class representatives. Here the existence of such an obstacle militates strongly against permitting this case to proceed as a class action.

The central thrust of the motion to deny class certification is the defendants' attack on the adequacy of representation that would be provided by the plaintiffs in this action. The attack is made along several fronts.

The first aspect of the attack is that the named plaintiffs have neither any meaningful comprehension of, nor, more importantly, any *interest* in this lawsuit, and that they have given full and unfettered control of the lawsuit to their counsel, Mr. Manning. They also claim that the named plaintiffs are concerned for their personal benefit and not for that of the class; that only the Bouchard Transportation Co. is willing to finance the litigation; that Mr. Manning is not qualified to conduct the litigation; and that Mr. Manning should be excluded from handling the case due to conflicts of interest.

The deposition testimony of the plaintiffs indicates a surprising lack of understanding of and interest in this lawsuit. Marion Bouchard did not even appear for her deposition, though her motion for protective order had been denied. Morton Bouchard, Jr.'s testimony at deposition shows that he is unaware of the nature of this litigation—he did not know or care that Norman Keith was Corco's CEO in April, 1975; he knew nothing of an arrangement between Keith and Tesoro for Keith's compensation; the only document in the case he ever read was the original complaint (the plaintiffs claim that since his deposition he has read this court's January 25 memorandum opinion); he stated that his complaint was really against Corco and not Tesoro.

Plaintiff Betz, a co-trustee of trusts that hold Corco stock testified that he did not authorize commencement of this case on behalf of the trusts, did not know that he was a named plaintiff, and knew nothing about the lawsuit. He could not identify any of the defendants. In addition, neither Morton Bouchard, Jr. nor Betz were aware of any duties they might have as class representatives. The upshot of these depositions is that Mr. Manning has virtually unfettered control of the lawsuit. In similar circumstances several courts—especially the United States District Court for the Southern District of New York—have denied class certification. *See, e. g., Levine v. Berg,* 79 F.R.D. 95 (S.D.N.Y.1978); *In re Goldchip Funding Co.,* 61 F.R.D. 592 (M.D. Pa.1974).

It also appears that none of the plaintiffs are willing to pay the costs of this litigation *except* the Bouchard Transportation Co. Morton Jr., Marion Bouchard, the trustees of the eight express trusts, and the executors of Morton Sr.'s estate are apparently unwilling (or legally unable) to commit funds to the litigation. This raises additional serious doubt as to whether these plaintiffs can be adequate class representatives. *See, e. g., Blumenthal v. Great American Mtge. Investors,* 74 F.R.D. 508 (N.D.Ga.1976); *Tomkin v. Kaysen,* 69 F.R.D. 541 (S.D.N.Y.1976). Perhaps as a

result of the attitudes of the named plaintiffs, the plaintiffs' counsel declared at the class certification hearing that only the Bouchard Transportation Company was being proffered as the class representative. This raises the interesting question of whether the corporation could be an adequate representative. Morton Bouchard, Jr., now president of Bouchard Transportation Co., testified that the company would pay whatever it might cost to prosecute this suit. However, the company, according to plaintiffs' counsel, has not paid anything to Mr. Manning yet for costs—and the defendants claim that it is Manning, not the plaintiffs, who is prosecuting this suit. Indeed, at the class certification hearing, plaintiffs' counsel admitted that "right now the lawyer is paying for [the case]." Moreover, even if the company is an adequate representative from a payment-of-costs vantage point, its president's lack of knowledge of or interest in this lawsuit must be ascribed to the company in assessing the company's adequacy as a class representative. As noted above, the deposition testimony of Morton Bouchard, Jr. indicates a lack of interest in this lawsuit. At the hearing on class certification, plaintiffs' counsel stated that the company was controlled not by Morton Bouchard, Jr., but by Marion Bouchard. This fact further weakens the argument that the company is an adequate class representative, since Marion Bouchard did not even have enough interest in the case to appear for her scheduled deposition. In sum, there is substantial doubt as to the adequacy of representation that would be provided by the company or by any of the proffered class representatives. The language of the opinion of the district court in *In re Goldchip Funding Co.*, 61 F.R.D. 592 (M.D.Pa.1974), is appropriate here:

> The class is entitled to more than blind reliance upon even competent counsel by uninterested and inexperienced repre-

sentatives. A proper representative can offer more to the prosecution of a class action than mere fulfillment of the procedural requirements of Rule 23. He can, for example, offer his personal knowledge of the factual circumstances, and aid in rendering decisions on practical and non-legal problems which arise during the course of litigation. 61 F.R.D. at 594–595.

The second aspect of the defendants' attack on the adequacy of representation is directed at the claimed inadequacy of plaintiffs' counsel. First, defendants contend that Manning has too little experience in matters of this nature and complexity to handle this case properly, and they point to a number of claimed errors he has already made in the conduct of this litigation. Manning has responded with a list of complex cases he has been involved in, and, though there might be some justification for doing so,[1] this court will not hold him an inadequate class counsel on the basis of inexperience.

Much more serious is the claim that Manning has several conflicts of interest that prevent him from fairly and impartially representing a class in this case, or that prevent him on ethical grounds from pursuing the case.

Manning was general counsel, secretary, and vice president of Corco from 1957 until 1963. One of the defendants here—Sol Descartes—was a director of Corco during that time. Thus in a sense Manning is now conducting a lawsuit against a former client and business associate. In addition, Manning negotiated a contract between Peerless Petrochemicals, Inc. and Corco on Peerless' behalf—which is one of the long-term contracts that allegedly started Corco on the road to financial disaster and is thus related to this suit. It is not disputed that

---

1. As noted below, Mr. Manning has not shown a great deal of interest in this litigation, having appeared for only one of three hearings held to date. In addition, Manning attached to his memorandum in support of the motion for class certification the opinion in *The Clarkson Co. v. Shaheen*, 76 Civ. 1373 (S.D.N.Y. Feb. 2, 1978) in which Judge Owen noted that Manning's firm had violated certain "basic principles" of pleading with regard to allegations of fraud. Finally, the defendants' claim that Manning has already committed several errors in the conduct of this lawsuit is not wholly without substance.

Manning represented Peerless in the Corco bankruptcy proceedings, though Manning claims that all actions taken in that connection were beneficial to Corco, and that his representation of Peerless was not hostile to Corco. However beneficial his representation of Peerless in the bankruptcy proceedings may have been for Corco, Manning's service as Peerless' attorney raises doubts as to the propriety of his prosecuting this case, especially with regard to the derivative claims. The defendants also claim that due to Manning's intimate knowledge of Corco affairs, he should not have accepted this case since he "ought to be called as a witness." The defendants also urge that there is an appearance of impropriety in Manning's prosecution of this suit, and that his emotional involvement in the issues will prevent him from providing fair representation.

These allegations of conflict of interest are not to be taken lightly, particularly in the context of a motion for class certification. While Manning's prosecution of this suit may not constitute a direct violation of disciplinary rules, there is certainly an appearance of impropriety in his prosecution of a suit against the directors of a corporation he once served as general counsel. There is also a serious question as to whether his own personal involvement in Corco's affairs would impair his ability fairly and impartially to conduct the lawsuit on behalf of a class. Similar considerations have led at least one other court to disqualify an attorney from representing a class. *See, e. g., Bachman v. Pertschuk*, 437 F.Supp. 973 (D.D.C.1977).

The final point that should be made regarding the adequacy of counsel issue—and the most important point—is that Mr. Manning has not shown an abundance of interest in this lawsuit. He has not appeared for either the hearing on motions for summary judgment or dismissal that led to the January 25 memorandum opinion, or for the hearing on class certification. Instead, he has sent a young associate who did not appear to be wholly familiar with either the facts or the law involved in this litigation and was of little help to this court in reaching its determination of the many issues, both legal and factual, involved in the motions so far presented.

The same considerations are urged by Keith and the Corco directors in support of their argument that these plaintiffs are not adequate representatives with respect to the derivative claims under Rule 23.1. These defendants also argue that the plaintiffs are inadequate derivative action representatives because their interests in pursuing the derivative suit clash with their interests in pursuing the class action claims. The argument is that since the prospects of financial gain are far greater with respect to the class action claims, the plaintiffs will neglect the derivative claims, which promise only slight economic gain at best. This is a substantial argument, and it was endorsed by the Fifth Circuit in *Blum v. Morgan Guaranty Trust Co.*, 539 F.2d 1388 (5th Cir. 1978):

> The relative value of the subject matters involved is an important consideration in evaluating a derivative suit instituted by a representative entangled in other litigation with the defendant.

In *Blum* the purported derivative representative was a *defendant* in the direct action, and the argument was that his overriding interest in the direct action against him would cause him to neglect the relatively minor derivative suit he had asserted as a counterclaim. The reasoning of the case, though, is applicable here, and poses a further obstacle to the prosecution of the derivative suit by these plaintiffs.

In sum, there are several serious challenges to the maintenance of this suit as a class action that counsel strongly against the propriety of class certification. It is not necessary to ground denial of certification on any particular argument raised by the defendants. In the aggregate, the substantial questions concerning adequacy of representation, adequacy of counsel, and typicality of claims mandate denial of the motion for class certification. For the same reasons, the motion for certification of a class with respect to the derivative claims are

denied, and the proposed derivative actions may not be maintained.[2]

## C. *Summary*

As a result of this order, only the following four claims remain in this lawsuit, none of which will proceed as a class action:

1) The claim under section 14(e) of the Securities Exchange Act of 1934 against Keith, the ongoing and pre-Tesoro Corco directors, Tesoro, West, Fullem, and Rote alleging omission of facts relating to an alleged compensation agreement between Keith and Tesoro from the May 4, 1975 joint press release.

2) The claim under section 14(e) against Tesoro, West, Fullem, and Rote alleging omission of facts relating to the alleged compensation agreement from the May 5, 1975 amended tender offer.

3) The claim under section 14(e) against Keith, the ongoing and pre-Tesoro Corco directors alleging misrepresentations with respect to a plan to consolidate Corco and Tesoro in the May 4, 1975 joint press release.

4) The claim under section 14(e) against Keith, the pre-Tesoro and ongoing Corco directors alleging misrepresentations in the April 22 and 28, 1975 tender offer letters.

## IV. *Lewis and Jaroslawicz—Motion to Dismiss*

On January 25, 1979, this court issued a Memorandum Opinion and Order dismissing without prejudice certain portions of the first amended complaints in *Jaroslawicz v. Phelps* and *Lewis v. Keith* on the ground that they did not meet the particularity requirements of Rule 9(b) of the Federal Rules of Civil Procedure. *See* 467 F.Supp. 227 (N.D. Tex.1979). After the court granted plaintiffs leave to amend, they filed a second amended complaint. Defendant Deloitte Haskins & Sells ("DH&S"), moving to dismiss this complaint, has raised some sub-stantial issues. First, it contends that certain of plaintiffs' allegations brought under § 10(b) of the Securities Exchange Act of 1934 do not fall within the increasingly narrow confines of that statute and should be dismissed for failure to state a claim on which relief may be granted. Second, the defendant argues that the portion of the complaint which claims DH&S is liable as a controlling person of Corco is insufficient on its face and must be dismissed. Third, DH&S submits that plaintiffs' contention that DH&S aided and abetted by silence must be dismissed because DH&S had no duty to disclose. Finally, DH&S contends that certain portions of the complaint again fail to comply with Rule 9(b) and should be dismissed with prejudice.

### A. *Count II: Manipulation.*

Plaintiffs' complaint rests on § 10(b) and Rule 10b–5. Count I alleges violations of § 10(b)'s prohibition on deception. It contends that the defendants omitted several material facts from numerous documents that were distributed to the public and that those omissions rendered the documents misleading. In Count II, plaintiffs simply reallege the facts contained in Count I, then state that those facts also state a claim for manipulation, the second prong of § 10(b). Specifically, plaintiffs allege that the various omissions were part of a manipulative scheme "designed to create an artificially active market by means of fraud upon the market." This scheme allegedly "caused the price at which Corco's stock was offered to the public to exceed the price said stock would have had if a truthful and full disclosure of material facts had been made by defendants."

Defendants challenge Count II on the ground that it does not allege facts that fall within the Supreme Court's narrow definition of manipulation set forth in *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977).[3] They

---

**2.** There is an element of synergism in this class certification denial. Counsel's lack of demonstrated interest in this suit would alone be sufficient, but the other attacks viewed singly would not. The sum of the other parts is inadequacy.

**3.** The Tesoro defendants joined in this aspect of the motion to dismiss.

argue that while plaintiffs complain of nondisclosures coupled with the intent to manipulate, the term "manipulation" embraces only certain specific practices in the marketplace. The issue that this case presents, then, is whether manipulation which the Supreme Court defined in *Santa Fe* as "practices, such as wash sales, matched orders, or rigged prices, that are intended to mislead investors by artificially affecting market activity," includes nondisclosures accompanied by an intent to manipulate the price of stock. *See* 430 U.S. at 476, 97 S.Ct. at 1302.

This court addressed a similar question in *Hundahl v. United Benefit Life*, 465 F.Supp. 1349 (N.D. Tex.1979). It determined that manipulation includes only practices in the marketplace which have the effect either of tampering with the price itself or of creating the false impression that certain market activity is occurring when in fact such activity is unrelated to actual supply and demand.

The *Hundahl* definition is premised on the assumption that the purpose of Congress in enacting the Securities Exchange Act of 1934 was to ensure a free market. The free market concept is not new, but was the guiding principle behind many common law decisions. Judge Woolsey in *United States v. Brown* clearly articulated the free market concept:

> When an outsider, a member of the public, reads the price quotations of an exchange he is justified in supposing that the quoted price is an appraisal of the value of the stock due to a series of actual sales between various persons dealing at arm's length in a free and open market on an exchange, and so represents a true chancering of the market value of that stock thereon under the process of attrition due to supply operating against demand. 5 F.Supp. 81, 85 (S.D.N.Y.1933), *aff'd on other grounds*, 79 F.2d 321 (2d Cir. 1935), *cert. denied sub nom. McCarthy v. United States*, 296 U.S. 650, 56 S.Ct. 309, 80 L.Ed. 462.

The legislative history supports the view that Congress' purpose in enacting the '34 Act, like that of the courts at common law, was to protect investors by preserving the free market. *See, e. g.*, S.Rep. No. 792, 73d Cong., 2d Sess. 3–5 (1934).

This court in *Hundahl*, relying on *Santa Fe*, reasoned that not all conduct that interferes with the free market is manipulative; rather only those acts that "artificially affect market prices" fall within the confines of § 10b and Rule 10b–5. To determine what the Supreme Court meant by this phrase, the court viewed the free market concept against the common law of manipulation and found that courts prohibited as manipulative schemes in the marketplace that prevented the market price from accurately reflecting the market's unimpeded judgment of the stock's value. *See, e. g., Harris v. United States*, 48 F.2d 771 (9th Cir. 1931); *United States v. Brown, supra; Rex v. DeBerenger*, 3 Maule & S. 67, 105 Eng. Reprint 536 (K.B. 1814).

An examination of the Securities Exchange Act bolstered the court's view that the term manipulation is limited to certain activities in the marketplace that interfere with the market's proper functioning. Section 9, for example, to which *Santa Fe* referred as providing examples of manipulation, prohibits devices that have the effect of misinforming investors by creating the false impression that certain market activity is occurring when in fact such activity is unrelated to supply and demand. Likewise, the court found that the legislative history of the Act supported the narrow definition of manipulation. *See Hundahl v. United Benefit Life, supra*, 465 F.Supp. at 1361.

Plaintiffs' allegations in Count II do not fall within this narrow definition of manipulation. While a complaint of nondisclosure may state a claim for deception under § 10(b), plaintiffs cannot convert it into a claim of manipulation simply by asserting that the defendants acted with manipulative intent. Plaintiffs do not complain of any activities in the marketplace itself. They do not allege any practices the

effects of which were to tamper with the price of stock or to create the false impression that certain market activity was occurring when in fact such activity was unrelated to supply and demand. Count II thus fails to state a claim for manipulation.

Plaintiffs now contend that Count II is not based on allegedly manipulative conduct but rather is founded on a "fraud on the market" theory and thus states a claim under Rule 10b-5 (1), (3).[4] This argument is inconsistent with plaintiffs' previous position. In their briefs filed in opposition to defendants' motions to dismiss the original complaint, plaintiffs stated that Count II alleged manipulation, and in its Memorandum Order of January 25, 1979, this court expressly so construed Count II. When DH&S in its briefs in support of the motion to dismiss the second amended complaint attacked Count II as a manipulation allegation, plaintiffs defended it as such. The complaint itself emphasizes that the focus of Count II is on the scheme in which defendants allegedly were involved and not on the nature of plaintiffs' reliance, as it would be if Count II alleged fraud on the market. Paragraph 1 states that whereas Count I challenges specific omissions and misstatements on which the plaintiffs relied, "Count II is based upon a larger course of conduct, scheme and conspiracy engaged in, assisted or aided and abetted by the defendants, which included, among other things, the unlawful manipulation of the market price of Corco's common stock . . . ." Count II thus can only be fairly construed as alleging manipulation. It fails to state a claim upon which relief may be

granted and is dismissed. If plaintiffs wish to amend their complaint so as to allege in ¶ 36 reliance not only on the omissions but also on the market itself, they have leave to do so within ten (10) days.

### B. DH&S as Controlling Person.

■ Plaintiffs allege that DH&S is liable for certain financial reports because it was a controlling person. This allegation is an effort to bring DH&S within the scope of § 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a), which provides:

Every person who, directly or indirectly, controls any person liable under any provision of this title or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

Although "control" is not defined in the Act, the Securities and Exchange Commission has defined it as "the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a person." 17 C.F.R. § 246.-126b–2(f). The Fifth Circuit adopted this definition in *Drier v. Tarpon Oil Co.*, 522 F.2d 199 (5th Cir. 1975).[5]

DH&S is a public accounting firm that has acted as independent public accountant and auditor for Corco and its subsidiaries. In that the complaint sets forth no special facts or circumstances to support the allegation that DH&S is a controlling person, plaintiffs apparently suggest that an inde-

---

**4.** Many courts have held that a plaintiff, asserting fraud on the market, need not allege that he purchased or sold stock in reliance on particular misstatements or omissions. Rather, he may claim that the misstatements or omissions caused a distortion in the market and this distortion misled him as to the fair market value of the stock. *Blackie v. Barrack*, 524 F.2d 891, 906–07 (9th Cir. 1975), *cert. denied*, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976); *Schlick v. Penn-Dixie Cement Corp.*, 507 F.2d 374, 381 (2d Cir. 1974), *cert. denied*, 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975). According to these courts, then, the sole difference between a fraud on the market theory of recovery

and the more standard 10b–5(2) theory is in the area of reliance. The Fifth Circuit has not yet resolved the question of whether reliance should be presumed in fraud on the market cases. *Rifkin v. Crow*, 574 F.2d 256 (5th Cir. 1978).

**5.** Some courts have gone so far as to define "control" as "influence short of actual direction." *Myzel v. Fields*, 386 F.2d 718, 738 (8th Cir. 1967), *cert. denied*, 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1143 (1968); *quoted with approval in Richardson v. MacArthur*, 451 F.2d 35, 41–42 (10th Cir. 1971).

pendent certified public accountant can always be alleged to be a controlling person of its client with respect to that client's financial statements. Plaintiffs explain that an independent accountant monitors its clients' financial condition and that those who buy the client's stock and lend the client money rely on the credibility afforded by the accountant's certification. Plaintiffs argue that it is the very fact that the public relies on the accountant's certification that gives the accountant control over financial disclosures.

It is not surprising that plaintiffs offer no cases in support of this proposition. First, such "control" does not constitute "the power to direct or cause the direction of management and policies" within the meaning of the Fifth Circuit's definition. Furthermore, the theory that plaintiffs here urge conflicts with the result in *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). In that case investors in the fraudulent securities scheme of a brokerage firm attempted to impose liability on the auditors of the brokerage firm for failure to conduct proper audits. The court held that absent a showing that *Ernst & Ernst* acted with scienter, liability under § 10(b) would not lie. Plaintiffs here are seeking to reach a result precisely opposite to that reached in *Ernst & Ernst*, a result that would extend tremendously the liability of accountants and other advisers and would replace the requirement that plaintiffs prove scienter with the requirement that defendants prove good faith. This court is unwilling to reach such a result. Plaintiffs' claim that DH&S is liable as a controlling person is dismissed.

### C. Rule 9(b).

DH&S again argues, as it did in its first motion to dismiss, that plaintiffs' complaint must be dismissed as to DH&S for failure to allege fraud with sufficient particularity under Rule 9(b), Fed.R.Civ.P. This court held in its previous memorandum order that a complaint satisfies Rule 9(b) if it specifies the relationship of each defendant to each misstatement or omission and his responsibility therefor. If the complaint alleges a scheme to violate the securities laws, then it must describe that scheme and each defendant's role therein sufficiently to give each defendant fair notice of the charges against it.

■ Plaintiffs' first claim against DH&S is that DH&S "was a direct participant in the wrongs alleged with respect to ¶ 25(J)." That subparagraph refers to the 1975 Corco Annual Report and, more specifically, to the "February 17, 1976 Auditor's Opinion removing qualifications from prior Opinions and attributing Corco's disappointing financial results entirely to transitory reasons extrinsic to the company other than the contracts;". This allegation sufficiently apprises DH&S of its relationship to and responsibility for the particular misstatements and thus satisfies Rule 9(b).

■ Plaintiffs also claim that "commencing prior to May 5, 1975, defendant DH&S conspired to commit the wrongs alleged." This allegation does not satisfy the Rule 9(b) requirements and is dismissed without prejudice. If plaintiffs wish to clarify with particularity the claimed conspiracy and DH&S's role in that conspiracy, they have leave to amend their complaint within ten days.

### D. Aiding and Abetting.

■ Defendant DH&S challenges on both Rule 9(b) and Rule 12(b)(6) grounds plaintiffs' allegation that DH&S is liable for aiding and abetting. Plaintiffs claim that "by its silence prior to September 30, 1975 and thereafter by its acts as alleged in paragraph 45 hereof, defendant DH&S knowingly or recklessly rendered substantial assistance to the participants in the other wrongs alleged, thus aiding and abetting in these violations." Paragraph 45 claims that between September 30, 1975 and December 9, 1976, DH&S "issued, reissued or consented to the use of its opinions rendered on Corco financial statements for the use of defendant Tesoro and its auditors."

In *Woodward v. Metro Bank of Dallas*, 522 F.2d 84, 94–96 (5th Cir. 1975), the Fifth Circuit set forth the test for aider and abetter liability under Rule 10b–5. The court held that, to support such a claim, a

plaintiff must establish 1) that another party has committed a securities law violation; 2) that the accused party had a general awareness that his role was part of an overall activity that was improper; and 3) that the accused aider and abetter knowingly and substantially assisted the violation. The Fifth Circuit further held that in cases in which the defendants' "knowing and substantial assistance" is passive silence, liability attaches to a defendant who had no duty to disclose only if scienter of the "high 'conscious intent' variety" can be proved, but that such liability may be imposed on a defendant having a duty of disclosure even if that defendant acted with a lesser degree of scienter. 522 F.2d at 96–97.[6]

An examination of the complaint as a whole reveals the matters as to which plaintiffs contend DH&S should not have remained silent. Because plaintiffs only accuse DH&S of acting with a reckless disregard of the truth and not with scienter of the "conscious intent variety," they can only be alleging that DH&S remained silent about certain matters as to which it had a duty of disclosure. Such a duty does not attach to an accountant for documents or papers that it did not prepare or assist in preparing. Of all the misstatements and omissions alleged in paragraph 25, the 1975 Corco Annual Report mentioned in ¶ 25(J) is the only document that DH&S had a hand in preparing. In addition, the plaintiffs refer in Count III, paragraph 44, to the 1974 financial report prepared by DH&S, another document as to which DH&S arguably had a duty of disclosure. Thus a close and generous reading of the complaint in light of the applicable law reveals that the 1974 financial report and the 1975 annual report are the documents referred to in plaintiffs' allegation that DH&S failed to satisfy a duty of disclosure. To the extent that the claim of failure to disclose by DH&S is intended to reach other documents, it fails to state a claim upon which relief can be granted. It is true that the plaintiffs in paragraph 21(E) properly should have referred to paragraph 44 in which they claim aiding and abetting by

silence. Their failure to do so is not fatal under Rule 9(b), however, for defendant now has full knowledge of the claim against it. Furthermore, plaintiffs' claim that DH&S aided and abetted by omitting the specific acts alleged in paragraph 45 also satisfies Rule 9(b).

The claim of nondisclosure as to the 1975 Annual Report, however, must be dismissed on other grounds. That report was disseminated in 1976. The complaint plainly states, however, that plaintiffs only seek to impose liability on DH&S for its silence before September 30, 1975. Plaintiffs cannot argue that they are actually seeking to impose liability for silence that occurred after that date. If they wish to amend their complaint, however, they may do so within ten days from the entry of this pretrial order.

---

6. After *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), this

"lesser degree of scienter" could be nothing less than recklessness.