**William STEINER, on his own behalf, on behalf of him a class of plaintiffs similarly situated, Plaintiff,**

v.

**SOUTHMARK CORPORATION, et al., Defendants.**

**Berenice ABRAMS, et al., Plaintiffs,**

v.

**SOUTHMARK CORPORATION, et al., Defendants.**

**Norman SALSITZ, on his own behalf, on behalf of a class of plaintiffs similarly situated, Plaintiff,**

v.

**SOUTHMARK CORPORATION, et al., Defendants.**

Civ. A. Nos. CA3–89–1387–D, CA3–89–1402–D and CA3–89–1492–D.

United States District Court, N.D. Texas, Dallas Division.

April 5, 1990.

Terrell W. Oxford of Susman Godfrey, Dallas, Tex., Daniel W. Krasner, Francis M. Gregorek and David P. Brower of Wolf Haldenstein Adler Freeman & Kerz, New York City, Steven J. Toll and Daniel S. Sommers of Cohen, Milstein & Hausfeld, Washington, D.C., and Gary E. Cantor and Larry Deutsch of Berger & Montague, Philadelphia, Pa., for plaintiffs.

Wm. Bruce Hoff, Jr., Robert J. Kriss, Gary A. Isaac and Susan J. Irion of Meyer, Brown & Platt, Chicago, Ill., and Robert W. Coleman and John W. Hicks, Jr. of Baker, Mills & Glast, Dallas, Tex., for defendant Grant Thornton.

FITZWATER, District Judge:

The instant motions to dismiss in these three related securities fraud actions require the court to address recurring questions of Fed.R.Civ.P. 9(b) pleading sufficiency inevitably presented in such actions. The court is also called upon to decide whether plaintiffs have stated claims for relief pursuant to § 11 of the Securities Act of 1933, 15 U.S.C. § 77k, and Texas common law theories.

I

Plaintiffs are purchasers of Southmark Corporation ("Southmark") securities publicly issued from January 1, 1986 through May 17, 1989.[1] They purport to act on behalf of all persons who purchased or otherwise acquired publicly issued Southmark securities during this time period. The alleged class includes a sub-class of persons who purchased Southmark debt securities in the open market between October 24, 1986 and May 17, 1989.

Plaintiffs bring these actions against certain officers and directors of Southmark as well as against defendant Grant Thornton ("Thornton"), Southmark's former auditor. Plaintiffs allege defendants are liable for violations of §§ 11 and 15 of the Securities Act of 1933 ("1933 Act"), 15 U.S.C. § 77k and 77o, and violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 ("1934 Act"), 15 U.S.C. § 78j(b) and 78t(a), and the 1934 Act's attendant Rule 10b–5.[2] They also assert pendent claims for common law fraud and negligent misrepresentation. Plaintiffs' claims, as set forth in their amended complaints ("complaints"), essentially are grounded upon a series of alleged misrepresentations contained in Southmark financial statements and related documents during the relevant period. Plaintiffs contend the statements and documents represented Southmark to be a financially sound, well-managed corporation. Thornton is not charged with making these misrepresentations, but instead with certifying financial statements it knew to be false or misleading and/or recklessly disregarding the content of the financial data certified.

According to plaintiffs, Southmark was not the financial gem in the rough its investors had hoped. On May 17, 1989 Southmark announced a writedown of Southmark's assets in excess of $1 billion. Southmark asserted the writedown was necessary to bring Southmark into compliance with accepted accounting principles

---

1. The court sets out the facts in the manner most favorable to plaintiffs in deciding the motion to dismiss. *See Rankin v. City of Wichita Falls*, 762 F.2d 444, 446 (5th Cir.1985).

2. Plaintiffs allege Thornton's conduct violated § 11 of the 1933 Act as well as § 10(b) of the 1934 Act and Rule 10b–5.

due to a prior inadequacy of loss reserves. The instant lawsuits predictably followed. Plaintiffs originally included Southmark as a defendant, but dropped the corporation after Southmark filed its petition for bankruptcy in July 1989. Thornton now moves to dismiss the allegations asserted against it, contending: first, the claims brought under § 10(b) and Rule 10b–5 run afoul of Fed.R.Civ.P. 9(b); second, the claims brought under § 11 of the 1933 Act are improperly pleaded; and third, the common law claims asserted state no cause of action against Thornton.

## II

The court considers first whether plaintiffs' complaints are adequate to satisfy the heightened pleading standard of Rule 9(b). Rule 9(b) jurisprudence is by now familiar, but the frequent use of the Rule to procure punctilious pleading detail indicates that the case law bears repeating.

### A

■ Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The particularity requirement of Rule 9(b) applies to securities fraud claims, *Smith v. Ayres*, 845 F.2d 1360, 1365 (5th Cir.1988), and operates to ensure that a securities action is not based solely on conclusory allegations. *See id.; Unimobil 84, Inc. v. Spurney*, 797 F.2d 214, 217 (5th Cir.1986). Thus, a general allegation of fraud or fraudulent conduct is insufficient to support a claim without supporting particulars. *Summer v. Land & Leisure, Inc.*, 664 F.2d 965, 970–71 (5th Cir. Unit B 1981), *cert. denied*, 458 U.S. 1106, 102 S.Ct. 3485, 73 L.Ed.2d 1367 (1982).

Rule 9(b) neither serves as a throwback to the hypertechnical pleading requirements of the Field Code nor requires needlessly repetitive pleading. *See In re Commonwealth Oil/Tesoro Petroleum Corp. Sec. Litigation*, 467 F.Supp. 227, 251 (W.D. Tex.1979) (Higginbotham, J.). Instead, "Rule 9(b) is read in conjunction with Fed. R.Civ.P. 8 which requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief.' " *Landry v. Air Line Pilots Ass'n Int'l AFL–CIO*, 892 F.2d 1238, 1264 (5th Cir.1990), *rehearing pending. See also Corwin v. Marney, Orton Inv.*, 788 F.2d 1063, 1068 n. 4 (5th Cir.1986); *Mitchell Energy Corp. v. Martin*, 616 F.Supp. 924, 927 (S.D.Tex.1985). To satisfy Rule 9(b), a complaint need only apprise the defendant of the time, place, and nature of fraudulent behavior and defendant's relationship thereto. *E.g., Mitchell Energy*, 616 F.Supp. at 927; *Keys v. Wolfe*, 540 F.Supp. 1054, 1065 (N.D.Tex. 1982) (Higginbotham, J.), *rev'd on other grounds*, 709 F.2d 413 (5th Cir.1983); *In re Commonwealth Oil/Tesoro Petroleum Sec. Litigation*, 484 F.Supp. 253, 269 (W.D. Tex.1979) (class certification decision) (Higginbotham, J.).

### B

Thornton contends Rule 9(b) is not satisfied in these three cases because the complaints: (1) are pleaded on information and belief; (2) fail to allege how plaintiffs have been damaged; (3) improperly lump all defendants together; (4) do not identify each of the documents upon which plaintiffs predicate their claims against Thornton; (5) do not allege with particularity the nature of Thornton's alleged misrepresentations; and (6) fail properly to allege reliance. The court considers each contention in turn.

#### 1

■ The general rule is that allegations of fraud cannot be based upon information and belief. *E.g., Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir.1989); *Madonna v. United States*, 878 F.2d 62, 66 (2d Cir.1989); *Luce v. Edelstein*, 802 F.2d 49, 54 n. 1 (2d Cir.1986). The rule may be relaxed, however, as to matters within the opposing party's knowledge. *Moore*, 885 F.2d at 540. In such cases, allegations satisfy Rule 9(b) if accompanied by a statement of the facts upon which the belief is based. *Id.; Madonna*, 878 F.2d at 66; *Luce*, 802 F.2d at 54 n. 1.

■ The court discerns no infirmity in plaintiffs' information and belief pleading.

Plaintiffs can hardly be expected to have personal knowledge of the facts constituting the wrongdoing where, as here, the precise nature of the allegations is that corporate officers and the corporation's auditor took steps to ensure that the true facts remained undisclosed. *See Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1439–40 (9th Cir.1987). The portions of plaintiffs' complaints alleging misrepresentations and specific acts of fraud are substantially precise. Plaintiffs have identified the nature of each alleged misstatement, the document or release in which it appeared, and the manner in which the misstatement was misleading. In addition, plaintiffs have specifically set out the actions of Thornton they contend amount to securities violations. That these allegations are based upon information and belief provides no basis for dismissal. *See id.*

## 2

■ Plaintiffs' failure to allege specifically how they have been damaged is equally untroubling at this early stage of the litigation. The premise of each complaint is that the alleged misstatements artificially inflated the value of Southmark securities and thereby injured those who purchased the securities on the open market. Plaintiffs have identified the relevant dates of purchase and types of securities involved. Plaintiffs' allegations as to damages are set forth with adequate clarity to put Thornton on notice of the charges against it.[3]

## 3

■ Thornton's assertion that the complaints are deficient because they do not apprise Thornton of the allegations against it is equally unpersuasive. While this court's decision in *Pearlstein v. Justice Mortgage Inv.,* 1979 Fed.Sec.L.Rep. (CCH) ¶ 96,760, 1978 WL 1143 (N.D.Tex.1978) (Hill, J.), could be selectively read to require a different result, a full and fair reading of that decision indicates it is not inconsistent with the result the court reaches today. In *Pearlstein* Judge Hill recognized the general proposition that Rule 9(b) requires only that a plaintiff identify the persons involved in and the circumstances surrounding the alleged fraud, such as the time, place, and contents of the purported scheme. *Id.* at 94,977. He held that Rule 9(b) was not satisfied due to a lack of correlation in plaintiff's complaint, noting that the plaintiff must "designate the specific defendants who are responsible for each individual document ..." in order to satisfy Rule 9(b). *Id.* Thornton relies upon this holding to support the proposition that plaintiffs' complaints do not apprise Thornton of the allegations against it. The court declines to adopt this reading of the language.

*Pearlstein* recognizes that Rule 9(b) can be satisfied by allegations that designate the nature of the defendant's relationship to a particular scheme and identify the defendant's role. *See id.* There is little question that plaintiffs' complaints accomplish this purpose. Indeed, plaintiffs' devotion of one entire section of its complaint to Thornton's alleged conduct comes closer to violating the "short, plain statement" standard of Rule 8(a) than Rule 9(b)'s specificity requirement. Plaintiffs' complaints apprise Thornton of the time, place, and nature of alleged fraudulent behavior and Thornton's relationship thereto. Rule 9(b) requires no more.

## 4

■ Thornton's contention that the complaints do not sufficiently identify each of the documents upon which plaintiffs' claims are based suffers a similar fate. Pages 40–111 of plaintiffs' complaints recite in detail each alleged misstatement and the document in which it appeared. Any contention to the contrary simply ignores the body of the complaints. Thornton may disagree that the identified documents were misleading. Rule 9(b) is not, however, an appropriate vehicle for a merits resolution. The complaints sufficiently

---

**3.** The court expresses no opinion on whether plaintiffs' failure to plead damages with greater precision may affect the pending motions for class certification.

identify the alleged misstatements and the documents in which they appear.[4]

## 5

Thornton's final Rule 9(b) salvo is directed at plaintiffs' alleged failure to properly plead reliance. Thornton contends reliance is an essential element of a claim brought under § 10(b) and Rule 10b–5, and avers plaintiffs' claims must be dismissed because they have inadequately pleaded reliance. Plaintiffs respond that, because they specifically allege claims based on non-disclosure, they are entitled to a presumption of reliance under *Affiliated Ute Citizens of Utah v. United States,* 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972). Plaintiffs additionally contend they are entitled to rely on the fraud-on-the-market theory of reliance. Thornton replies that neither theory of reliance is available.

■ It is settled that reliance is an element of a Rule 10b–5 cause of action. *Basic, Inc. v. Levinson,* 485 U.S. 224, 243, 108 S.Ct. 978, 989, 99 L.Ed.2d 194 (1988). Proof of reliance is "essential to a claim under Rule 10b–5 because it 'provides the requisite causal connection between a defendant's misrepresentation and a plaintiff's injury.' " *Smith v. Ayres,* 845 F.2d at 1363 (quoting *Levinson,* 485 U.S. at 243, 108 S.Ct. at 989). Reliance requires a plaintiff to prove that the plaintiff *actually* based decisions upon the defendant's misstatements or omissions. *Abell v. Potomac Ins. Co.,* 858 F.2d 1104, 1118 (5th Cir.1988) (emphasis in original), *vacated on other grounds,* —— U.S. ——, 109 S.Ct. 3236, 106 L.Ed.2d 584 (1989).

■ Even absent the presumptive reliance principles of *Affiliated Ute* and fraud-on-the-market doctrine, the court concludes that plaintiffs have adequately pleaded reliance for purposes of Rule 9(b). In paragraphs 5, 135, 153, and 156 of the complaints, plaintiffs allege that each of them relied, *inter alia,* upon Southmark's public reports, press releases, statements, SEC filings, and the certifications of Thornton in purchasing Southmark securities. The various documents are then detailed throughout the remainder of the complaints. While Thornton may be correct that plaintiffs' allegations of reliance are conclusory, this is inherently true of reliance allegations. One either relies on a particular statement or one does not, there is no middle ground. Plaintiffs' allegations of reliance are sufficient to withstand Rule 9(b) scrutiny. Alternatively, the court concludes plaintiffs can rely upon a fraud-on-the-market theory but cannot qualify for the *Affiliated Ute* presumption.

■ The court first examines the *Affiliated Ute* argument. In that decision the Supreme Court held that positive proof of reliance is unnecessary in cases involving primarily a failure to disclose. 406 U.S. at 153, 92 S.Ct. at 1472. The reliance element is instead established by a showing that the facts withheld are material in the "sense that a reasonable investor might have considered them important in the making of [a] decision." *Id.* at 153, 154, 92 S.Ct. at 1472, 1472. The Fifth Circuit has consistently construed *Affiliated Ute* to create only a rebuttable presumption of reliance in a limited class of cases. In *Finkel v. Docutel/Olivetti Corp.,* 817 F.2d 356 (5th Cir.1987), *cert. denied,* 485 U.S. 959, 108 S.Ct. 1220, 99 L.Ed.2d 421 (1988), the circuit court recognized that *Affiliated Ute* creates a "rebuttable presumption of reliance based on proof of materiality in cases alleging deception by non-disclosure of information." *Id.* at 359. The *Finkel* panel read prior Fifth Circuit precedent as establishing the principle that "where a plaintiff alleges deception by defendant's nondisclosure of material information, the *Ute* presumption obviates the need for plaintiff to prove actual reliance on the

---

**4.** The court reaches the same conclusion with respect to Thornton's contention that the complaints do not allege with particularity the nature of Thornton's alleged misrepresentations, as well as Thornton's contentions regarding plaintiffs' pleading of scienter and Thornton's participation in a conspiracy. The court expresses no opinion on the substantive merits of these claims, but has no hesitancy in concluding the allegations are sufficiently specific to satisfy the dictates of Rule 9(b).

omitted information." *Id.* (quoting *Rifkin v. Crow*, 574 F.2d 256, 262 (5th Cir.1978)). It therefore becomes the duty of this court to characterize analytically a 10b–5 action as either primarily a nondisclosure case—in which instance the *Affiliated Ute* presumption applies—or a positive misrepresentation case. *Id.* According to *Finkel*, this choice is justified by Rule 10b–5 itself.[5] The first and third subsections of Rule 10b–5 are implicated by cases involving primarily a failure to disclose; the second subsection of Rule 10b–5 is implicated by cases involving primarily a misstatement or failure to state a fact necessary to make statements made not misleading. *Id.* at 360.

Subsequent to *Finkel*, the Fifth Circuit has repeatedly reaffirmed the importance of determining whether a particular case is bottomed primarily on a failure to disclose or instead on positive misstatements. *See Abell*, 858 F.2d at 1118, 1119 (*Ute* presumption limited to cases in which plaintiffs base their complaint primarily upon alleged omissions); *Smith*, 845 F.2d at 1363 (*Ute* presumption warranted only under subsections one and three of Rule 10b–5, but not under subsection two). The nondisclosure suits to which the *Ute* presumption applies are those in which the complaint is grounded primarily upon allegations that the defendant failed to disclose *any information whatsoever* relating to material facts about which the defendant had a duty to disclose. *Abell*, 858 F.2d at 1119. *Ute* is inapposite, however, to cases where the plaintiffs allege either that the defendant has made false statements or has distorted the truth by making true but misleading incomplete statements. *Id.* Thus the *Ute* presumption applies in nondisclosure cases, but not in falsehood or distortion cases. *Id.*

Although plaintiffs offer the token suggestion that their claims rest on both affirmative statements and omissions, and thus contend the *Ute* presumption applies, the court has little difficulty rejecting this suggestion. Plaintiffs' primary contention is that defendants created a distorted view of Southmark's financial condition through a series of overly optimistic and/or incomplete financial statements, press releases, and statements. The "omissions" of which plaintiffs complain are in reality partial disclosures that allegedly tainted the market's view of Southmark's worth, thereby injuring those who purchased Southmark securities. As in *Abell*, the crux of plaintiffs' complaints centers on distortions, not omissions; hence plaintiffs are not entitled to the *Ute* presumption. *See id.*

■ The court is persuaded, however, that plaintiffs are entitled to the presumption of reliance afforded by the fraud-on-the-market theory.

■ A fraud-on-the-market is any deceit that successfully disseminates false or misleading information into the securities market or withholds vital information from that market. *Abell*, 858 F.2d at 1120. The theory holds that such a deceit defrauds investors even when they are unaware of misrepresentations or omissions that show the market price, because investors depend upon the integrity of the market price. *Id.* Thus if a plaintiff is entitled to rely on the fraud-on-the-market theory, individualized proof of reliance is not required. *See Levinson*, 485 U.S. at 241–248, 108 S.Ct. at 988–992.

The Fifth Circuit first adopted a form of the fraud-on-the-market presumption of reliance in its *en banc* decision of *Shores v. Sklar*, 647 F.2d 462 (5th Cir.1981) (en banc), *cert. denied*, 459 U.S. 1102, 103 S.Ct.

---

5. Rule 10b–5:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

  (a) To employ any device, scheme, or artifice to defraud,

  (b) To make any untrue statement of material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

  (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5 (1990).

**277**

722, 74 L.Ed.2d 949 (1983). The court of appeals there held that, in cases alleging misrepresentations under subsection two of Rule 10b–5, the general rule requiring actual proof of reliance applies. *Id.* at 468. The court altered the established method of proof for cases brought under the first and third subsections of Rule 10b–5, however. As to those cases the court held that reliance could be established by proof that a defendant, through a fraudulent scheme, brought securities on to the open market and that the plaintiff relied on the integrity of the market in purchasing the securities. *Id.* at 469. Subsequent to *Shores* the Fifth Circuit adhered to its limitation of fraud-on-the-market only to cases proceeding under Rule 10b–5(a) or (c). *Finkel,* 817 F.2d at 362. A plaintiff proceeding under Rule 10b–5(b) was barred from recovery absent proof of direct reliance. *Id.* at 363.

The *Finkel* formulation stood until the Supreme Court rendered its decision in *Levinson.* There the Court determined that "[b]ecause most publicly available information is reflected in the market price, an investor's reliance on any public material misrepresentations ... may be presumed for purposes of a Rule 10b–5 action." 485 U.S. at 247, 108 S.Ct. at 991. The effect of *Levinson* was to vitiate the prior distinction cabining fraud-on-the-market to nondisclosure cases and to give the presumption potential applicability to any Rule 10b–5 action involving openly traded securities. *See Abell,* 858 F.2d at 1120. *Levinson* did not define with precision the standards to be applied in fraud-on-the-market cases, instead leaving "each of the circuits room to develop its own fraud-on-the-market rules." *Id.*

▮ The Fifth Circuit has accepted the Court's invitation. The rules applicable in the Fifth Circuit are two-fold. The fraud-on-the-market presumption of reliance is available only where the subject securities were traded actively in large markets, or where the promoters knew that the subject enterprise was worthless when the securi-

ties were issued, and successfully issued the securities only because of a fraudulent scheme. *Id.* at 1122, 1123. In the first instance a plaintiff prevails by proving that the defendant's nondisclosure or misstatements materially affected the market price of the securities. *Id.* at 1121 (citing *Finkel,* 817 F.2d at 364).

▮ Thornton does not dispute that Southmark securities were traded actively in large markets. Instead, Thornton focuses once more upon plaintiffs' failure to plead with specificity the damages, if any, each has suffered. Thornton contends the element of materiality is absent because plaintiffs do not allege any negative change in Southmark stock following the May 17, 1989 "writedown" of Southmark's assets. The court does not read plaintiffs' complaints so begrudgingly. Plaintiffs allege they were damaged by *purchasing* Southmark securities at prices artificially inflated due to defendants' alleged misrepresentations and misconduct. Plaintiffs would be entitled to recover upon a showing that the purchase price for the securities was in fact inflated by defendants' alleged fraudulent scheme, resulting in plaintiffs' paying more than the true market value of the securities. Proof that prices dropped after the May 17, 1989 announcement is not ineluctable to plaintiffs' case. They have adequately pleaded the elements of the fraud-on-the-market, *see Levinson,* 485 U.S. at 248 n. 27, 108 S.Ct. at 992 n. 27, and the presumption of reliance is thereby applicable.[6]

## III

The court next considers whether plaintiffs have stated a valid claim under § 11 of the 1933 Act.

▮ Section 11 provides a cause of action against certain enumerated parties who are named as having prepared or certified a registration statement that contains false or misleading information. *Herman & MacLean v. Huddleston,* 459 U.S. 375, 381–82 & n. 13, 103 S.Ct. 683, 686–87 & n.

---

**6.** The court does not intimate, of course, that reliance has been conclusively established. The fraud-on-the-market presumption is rebuttable, *Abell,* 858 F.2d at 1120, and serves only to shift to the defendants the burden of persuasion as to reliance. *Id.*

13, 74 L.Ed.2d 548 (1983); 15 U.S.C. § 77k(a). An accountant is liable under § 11 for statements in a registration statement prepared or certified by the accountant. 15 U.S.C. § 77k(a)(4). An accountant is not liable for portions of a registration statement that the accountant neither prepared or certified. *Huddleston*, 459 U.S. at 386 n. 22, 103 S.Ct. at 689 n. 22. Section 11 violations need not, however, be pleaded with the specificity required of fraud claims governed by Rule 9(b). *Bernstein v. Crazy Eddie, Inc.*, 702 F.Supp. 962, 973 (E.D.N.Y.1988). Plaintiffs instead need only comply with the requirement of Rule 8(a) that they set forth a short and plain statement of the claim. *Id.*

■ Actions brought under § 11 are governed by the limitations period contained in § 13 of the 1933 Act,[7] 15 U.S.C. § 77m. *Summer v. Land & Leisure, Inc.*, 664 F.2d at 967–68. Plaintiffs who sue on the basis of § 11 must allege compliance with § 13 as part of their claim. *E.g., Bernstein*, 702 F.Supp. at 973; *Bresson v. Thomson McKinnon Sec.*, 641 F.Supp. 338, 343 (S.D.N.Y.1986). This requires plaintiffs to set forth: (1) the time and circumstances of the discovery of the fraudulent statement; (2) the reasons why it was not discovered earlier (if more than one year has elapsed); and (3) the diligent efforts which plaintiffs undertook in making or seeking such discovery. *Bernstein*, 702 F.Supp. at 973, 974 (citations omitted). The third requirement is relaxed where the plaintiffs allege that defendants engaged in an on-going effort to conceal from the public the company's true financial condition. *See id.* at 974. This is because plaintiffs have no reason to undertake efforts to discover the truth if there is no reason to suspect anything is amiss. *Id.*

■ Thornton contends plaintiffs' § 11 claims are deficient because plaintiffs do not adequately identify the allegedly misleading statements or omissions upon which their claims against Thornton are based and because plaintiffs have not adequately pleaded compliance with § 13's limitations period. In paragraph 119 of the complaints, plaintiffs allege Thornton is liable under § 11 for issuing opinion letters in conjunction with Southmark prospectuses issued October 24, 1986 and January 30, 1987, wherein Thornton stated it had examined Southmark's consolidated financial statements and that the statements fairly presented the financial position and operation of Southmark. In paragraphs prior to paragraph 119, the complaints detail extensively the manner in which plaintiffs contend the financial statements are misleading. Thornton certified the accuracy of the consolidated financial statements as part of its duties as Southmark's auditor. Thornton cannot seriously contend the complaints fail to allege which financial statements are misleading. Even a cursory review of the complaint as a whole indicates otherwise. The court finds that the complaints identify the consolidated financial statements certified by Thornton with sufficient precision to withstand a motion to dismiss.

■ The court similarly concludes plaintiffs have properly alleged compliance with the limitations period of § 13. Paragraph 122 of the complaints alleges that plaintiffs' claims were brought "within one year after the discovery of the untrue statements and omissions alleged herein and within three years after the Southmark Debt Offerings were made to the public." While this portion of the complaints is not a model of clarity, it is apparent from reviewing the complaint as a whole that plaintiffs contend they did not discover the fraudulent nature of the statements until Southmark's May 17, 1989 disclosure. Further, it is plain that plaintiffs have alleged the false representations were not discovered earlier because of a concerted effort by

---

7. Section 13 provides, in pertinent part:

No action shall be maintained to enforce any liability created under section 77k or 77l(2) of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence.... In no event shall such action be brought to enforce a liability created under section 77k ... of this title more than three years after the security was bona fide offered to the public....

15 U.S.C. § 77m.

Thornton and Southmark management to conceal the true nature of the financial statements. While it may ultimately be proven that plaintiffs should have discovered the alleged misstatements earlier, this determination is one of fact not appropriate for resolution on motion to dismiss. *In re Worlds of Wonder Sec. Litigation,* 721 F.Supp. 1140, 1147 n. 2 (N.D.Cal.1989) (citing *Semegen v. Weidner,* 780 F.2d 727, 733 (9th Cir.1985)). As to plaintiffs' failure to plead that they undertook diligent efforts to uncover the falsity of the statements, the court finds that failure insignificant where, as here, plaintiffs allege they had no reason to question the accuracy of the statements prior to disclosure.[8] *See Bernstein,* 702 F.Supp. at 974.

## IV

■ The court finally considers Thornton's attack on plaintiffs' state law claims. Thornton first contends plaintiffs' common law fraud claims must be dismissed because plaintiffs do not allege with particularity (1) that Thornton made any actionable misrepresentation or omission; (2) that Thornton acted with scienter; or (3) that plaintiffs directly relied upon any allegedly misleading Southmark statements. Thornton additionally asserts the fraud claims are deficient because plaintiffs do not allege any facts to support the inference that Thornton made misleading statements with the intention they would be acted upon by plaintiffs. Given the court's prior conclusions that plaintiffs have adequately pleaded the nature of Thornton's misstatements

and the existence of scienter, the court declines to dismiss the fraud claims on these grounds. As to the issue of reliance, the court rejects plaintiffs' attempts to incorporate the fraud-on-the-market presumption of reliance into Texas state law. Absent Texas precedent extending the theory to this degree, this court applying state law will not fashion such an extension. The court is unable to conclude, however, that plaintiffs will be unable to prove direct reliance. Plaintiffs have adequately alleged direct reliance to withstand a motion to dismiss. Finally, regarding whether plaintiffs will ultimately be able to demonstrate that Thornton made or certified statements with intent that the statements be acted upon by plaintiffs, the court considers this a question of fact inappropriate on motion to dismiss. The motion to dismiss the fraud claim is therefore denied.

■ Thornton next contends plaintiffs' claims for negligent misrepresentation must be dismissed because Thornton owed no duty to plaintiff with respect to Thornton's work on Southmark financial reports. Texas courts follow § 552 of the Restatement (Second) of Torts in imposing liability for negligent misrepresentations. *Geosearch, Inc. v. Howell Petroleum Corp.,* 819 F.2d 521, 523 (5th Cir.1987).[9] Liability under § 552 is limited to persons (1) whom the maker of the representation intends to benefit or (2) to a limited group of persons for whose benefit the maker intends to supply the information or knows that the recipient intends to supply it. *Hermann Hosp. v. National Standard Ins. Co.,* 776

8. The court reemphasizes that its conclusions today are limited only to the motion to dismiss. Factual development in this action may affect resolution of the substantive issues in a summary judgment or trial context.

9. Section 552:
(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to the loss suffered
    (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
    (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.
(3) The liability of one who is under a public duty to give the information extends to losses suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

S.W.2d 249, 253 (Tex.App.1989, writ denied). In the particular context of an accounting firm's liability under § 552, Texas courts have held that an accountant preparing audited financial statements may be liable for misstatements if the accountant knows or should have known that such statements would be relied upon by a limited class of persons. *Blue Bell, Inc. v. Peat, Marwick, Mitchell & Co.*, 715 S.W.2d 408, 412 (Tex.App.1986, writ ref'd n.r.e); *see also Shatterproof Glass Corp. v. James*, 466 S.W.2d 873, 880 (Tex.Civ.App. 1971, writ ref'd n.r.e.) (accountant may be held liable to third party who suffers damage in reliance on financial statements negligently prepared by accountant). Recent Texas precedent extends § 552 liability further, holding that liability "is extended to the persons or class of persons whom the maker of the representation intends to benefit or who foreseeably may be expected to act in reliance on it." *Hermann*, 776 S.W.2d at 254.[10]

■ In the present case the court cannot conclude at this stage of the litigation that plaintiffs have failed to state a claim under § 552. The group of persons to which Thornton is potentially liable is not the public at large, as Thornton suggests, but instead the limited class of purchasers of Southmark securities. It is plausible to infer that plaintiffs may foreseeably have been expected to rely on Thornton's statements concerning Southmark's financial condition. The court thus concludes plaintiffs have stated a valid claim for negligent misrepresentation.[11]

Thornton's motions to dismiss are denied.

SO ORDERED.

---

**10.** The court does not consider the Fifth Circuit's decision in *Geosearch* to be inconsistent with recent Texas precedent. To the extent *Geosearch* can be read to reach a different result, however, it is clear that Texas courts now construe § 552 more broadly than they did at the time *Geosearch* was decided.

---

**11.** For the reasons stated previously, the court rejects Thornton's contention that the negligent misrepresentation claim must fail because plaintiffs did not adequately plead direct reliance.